JOHN KNIGHT, Appellant, v. THE CITY OF DES MOINES, Appellee.

**Municipal Corporations:** SIDEWALK ACCIDENT: NEGLIGENCE: EVIDENCE. In this action for injuries, the result of an alleged defective sidewalk, the evidence is held to require submission of the questions of negligence of the city, whether the injuries were caused by a defective sidewalk, and contributory negligence of plaintiff.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

WEDNESDAY, MAY 8, 1912.

ACTION at law to recover damages for injuries sustained by plaintiff, due to a fall upon one of the sidewalks of the defendant city. Trial to a jury, directed verdict for defendant, and plaintiff appeals. *Reversed* and *remanded.*

*John McLennan,* for appellant.

*H. W. Byers, R. O. Brennan* and *Eskil Carlson,* for appellee.

DEEMER, J. I.—Plaintiff is a teamster, who at the time of the accident in question, lived at what was known as 212 Forest Avenue, in the city of Des Moines. To reach his home, he had to pass over Second Street, which runs north and south, intersecting Forest Avenue some

distance north of his then residence. At the time of the accident, Second Street had not been fully improved, and there were no sidewalks, save a temporary one, on the west side thereof, made of boards laid lengthwise, in places two boards wide and at other places three. On the evening of January 8, 1909, there was a light fall of snow in the city of Des Moines, which covered the walk in question. About noon on the next day, plaintiff, in returning to his home from the business part of the city, and passing over the sidewalk in question, stumbled or slipped and fell, and received the injuries of which he complains. He claims to have fallen near a telegraph pole, which was about one hundred and fifty feet from what is known as Short Street, which is a street running east and west, intersecting Second Street. At this point, the said walk was two planks wide, each board being either eight or ten inches in width; and he charges that these boards were decayed and rotten and otherwise in an unsafe and dangerous condition. Plaintiff had lived in the locality but a short while, and said he did not know of the dangerous condition of the walk. He testified at the trial that the boards were rotten at the ends, and that by reason thereof his feet slipped off, and one of them went into a ditch. As a general rule, it seems that these boards were laid upon the ground, with small cross-pieces at the ends thereof to which the ends were fastened; and the testimony tends to show, or at least a jury would have been warranted in finding, that the planks where plaintiff fell were rotten, some thinner than others, but with a general slope toward the street, and that at the place where plaintiff was injured the ends of one of the planks was decayed and rotten for twenty-five or thirty inches from the end. Other witnesses testified that the planks, especially the east ones, were badly rotted and sloped toward the street. Second Street from Short to Forest Avenue is somewhat steep; and the slope of the walk itself, especially in the condition in

which witnesses describe it, was enough to make it dangerous. Witnesses testified that the walk had been in a defective and dangerous condition for many months; and some of them either fell or saw others fall at the place where plaintiff received his injuries. There was also testimony to the effect that the walk had been constructed of second-hand lumber, and that many of the planks were decayed. There was, as we think, enough testimony to take the case to the jury upon the question of defendant's negligence. The walk had been out of repair and dangerous for a sufficient length of time before the injury to have enabled the defendant, in the exercise of ordinary care and prudence, to repair the defects before the injury occurred.

II. Claim is made that plaintiff did not show that these defects were the cause of his injuries. Here, again, we think the question was for a jury. He testified that he was walking carefully and prudently; that at the place in question he fell upon the sidewalk; that one foot went east and the other west; that there was a ditch there, and that one or both feet went into the ditch. He also testified to the defective condition of the walk where he fell. Again, the witness specifically said that the condition of the plank was what caused the fall. Another witness, who saw the accident, testified that plaintiff seemed to fall, slipped, one leg out to the east, and the other one right on the walk straight ahead. The issue as to what caused the plaintiff to fall was surely for the jury.

III. The only other point in the case is the question of plaintiff's care. Was he guilty of contributory negligence? This, under the testimony, was a fair question for the jury. There is no showing that plaintiff knew it was imprudent to use the walk; indeed, the contrary might well have been found. He had not lived long in the neighborhood, and at the time in question seems to have been taking the usual precautions. There is some suggestion in the record that he was intoxicated; but this was a question for

the jury. While there had been a light fall of snow, there was testimony from which a jury may have found that it had practically disappeared, and that this snow was not the cause of the plaintiff's fall; nor did its presence demand that he keep off the walk for his own safety. Our conclusions find support in *Cox v. City*, 111 Iowa, 646; *Cook v. Hedrick*, 135 Iowa, 23; *Van Camp v. Keokuk*, 130 Iowa, 716; *Carter v. Lineville*, 117 Iowa, 532; *Hodges v. City*, 109 Iowa, 444; *Sylvester v. Casey*, 110 Iowa, 256; *Hoover v. Mapleton*, 110 Iowa, 571.

The verdict was directed largely because there was no showing that the defective walk was the cause of the injury, and for the further reason that it was occasioned by the snow and ice which had fallen thereon. These propositions were, we think, for a jury. The case was not tried as closely as it might have been; and we are in doubt regarding some of the testimony. Some of the witnesses gave their testimony by gesture or in pantomime, and this has not been reproduced, so that we can make much out of it. On the whole record, however, we think the case was for a jury, and that the trial court erred in directing a verdict.

The judgment must be, and it is, *reversed* and *remanded*.