WILLIAM CRATTY, Appellant, v. CITY OF OSKALOOSA, Appellee.

NEGLIGENCE: Negligence Per Se From Knowledge of Defect. A pedestrian, in passing over a sidewalk in the nighttime, is guilty of negligence *per se* when he proceeds without any regard to his own knowledge that the walk is of ample width, and that, at a given point, one half of it is perfectly safe and the other half *dangerous*.

EVANS, C. J., WEAVER and PRESTON, JJ., dissent.

*Appeal from Mahaska District Court.*—CHARLES A. DEWEY, Judge.

APRIL 6, 1921.

ACTION against the defendant city for damages on account of injuries claimed to have resulted from a fall upon a defective sidewalk. The court instructed the jury to return a verdict for defendant, and plaintiff appeals from a judgment against him for costs.—*Affirmed.*

*Reynolds & Orvis,* for appellant.

*Thomas J. Bray,* for appellee.

STEVENS, J.—I. Between 6 and 7 o'clock in the evening of December 15, 1916, while the plaintiff was returning to his home from a grocery store, a short distance from his residence, to which he had gone to purchase some supplies for the household, he fell upon the sidewalk and into an adjacent excavation, suffering severe injuries. The description of the walk at the place of the accident, as set out in the abstract, is not very clear or satisfactory. It appears, however, therefrom that the walk was located on the west side of D Street, which extends north and south; that it was constructed of concrete blocks, approximately 24 inches square; that several of the blocks on the west side of the walk had settled, to slant 3 or 4 inches on the outside to the west. The east half was in a sound condition, and suitable for the use of pedestrians. The night on which the accident occurred was cold, dark, and misty, and possibly there was some sleet on the walk. Plaintiff, at the time, was accompanied by a man by the name of Rea, who was walking a short distance ahead of him, and with whom he was conversing. Plaintiff had resided in the vicinity of the alleged defective walk about 3 weeks, and had passed over it several times. He testified that he was walking about the center of the walk; that he caught one foot in the crack, and that the other foot slipped, precipitating him to the walk and into the excavation. We are unable to determine definitely from the testimony whether the east edge of the sunken blocks projected above the level of the walk or not.

No questions were propounded to plaintiff by his counsel in chief as to what care he was exercising at the time of the accident, but, upon cross-examination, counsel for defendant went fully into this question. Plaintiff admitted that he knew the condition of the walk.

"Q. And you had walked over that walk many, many times? A. No, sir, I had not. Q. How many times? A. I didn't book them each time I went over, but not very many times. Q. How many times a day did you go to town during those three weeks? A. Not very often. I never loafed around town much. I probably went every other day; probably not that often; not more than once every other day. Some of the time I walked over this sidewalk, and some of the time I didn't. Q. And you observed nothing wrong with this sidewalk before, did you? A. Yes, I should say so. Q. When did you first observe that there was something wrong with this sidewalk? A. I couldn't answer that. I could not say exactly. Q. First time you went there, you didn't see anything wrong with it? A. Probably not. Q. Nor the second time? A. I don't know. Q. You could see it was out of order the first or second time you walked over it? You knew the walk was out of order at this point, and you saw it? A. Certain I did. Q. You saw this crack in the center of the walk? A. Yes. Q. And you noticed that the walk slanted down on the west side? A. Yes, sir. Q. And you knew all about that? A. Well, I could see that the walk was slanting and open,—yes, sir.''

From the foregoing testimony, it is clear that plaintiff knew the condition of the walk. As above stated, the defect was produced by the slanting of the outside blocks of the west half of the walk to the west, thereby leaving a crack, which plaintiff testified was 3 or $3\frac{1}{2}$ inches wide in the center. Its condition was patent to a casual observer, and there were no latent or hidden defects that contributed to the dangers thereof. It further appears from the cross-examination of plaintiff that he knew and appreciated the dangerous character of the walk, as a few extracts from his testimony, in addition to that quoted above, will show:

"Q. Before you were hurt, when you walked over that walk, it didn't look like a bad place to you? A. Yes, it did. Q.

You knew it was a bad place? A. Certainly; I will admit that. Q. There wasn't anything to prevent your seeing the walk as you came along there? A. Yes, there was. Q. What was that? A. It was dark. Q. You had walked along there before, and when it was dark? A. Yes, I had. Q. You knew about this bad place? A. Yes.''

He does not claim that he was paying heed or attention to the condition of the walk at the time of the accident. Upon this point he testified:

''A. I was just walking along there right in the center, along toward the center, talking to Mr. Rea, who was walking along here with me, but just a few feet ahead of me. There was a crack right here in the center of the walk. Q. You were walking in the crack? You were walking between the crack and the outer edge? A. Yes. Q. Just what did you do then? A. I was walking there, and my right foot slipped in this crack there, and I hit my foot against this. My left foot hit the corner or side, whatever it would be, of this here walk; this block here, it stuck up, and as I stumbled, I fell. * * * Q. But for some reason, when you came to it on this night, you were not thinking about what you were doing or where you were going? A. Not exactly about that,—no. Like anybody else would walk along, not happening to think of everything. Q. You have said that you have walked over this piece of walk,—is that true, without getting hurt? You said you were not thinking at all. A. About the walk, no, not at all. Q. You were not looking either, were you? A. No. Q. Not thinking or looking? A. No. Q. Nor trying to look or trying to think? A. No, sir, there was nothing to lead me to think about anything like that at the present time. Q. And you just simply walked along, without paying any attention to where you were going? A. That was about it. I was going on an errand, and just walked over the walk, the blocks. It is a 4-foot walk. I don't know about the thickness.''

One of the grounds of defendant's motion for directed verdict was that plaintiff's cause of action was barred by the statute of limitations. The claim of counsel is that the notice served upon the city does not comply with Section 3447 of the Code. We are of the opinion, however, that the notice is suf-

ficient. *Howe v. Sioux County,* 180 Iowa 580; *Blackmore v. City of Council Bluffs,* 189 Iowa 157.

II.   The principal ground, however, upon which the motion for a directed verdict was based, is that plaintiff was guilty of contributory negligence.  We have quoted sufficiently from the record to indicate that plaintiff was not thinking about the defect in the walk, and that he did nothing to avoid the possible consequences of passing over the same.  Upon re-examination by his counsel, he sought to modify somewhat his previous testimony as to his knowledge and appreciation of the alleged dangerous character of the walk.  His answers, however, to the questions upon cross-examination were direct and positive, and, upon recross-examination, he again admitted substantially the same facts.  The law is well settled in this state that mere knowledge of a defect in the sidewalk, or that the use thereof may be attended with some danger and that its condition is such as to subject a person passing thereover to the danger of being injured, is not sufficient to charge with contributory negligence one who falls because of such defects and is injured.  *Sachra v. Town of Manilla,* 120 Iowa 562; *Kendall v. City of Albia,* 73 Iowa 241; *Hanson v. City of Anamosa,* 177 Iowa 101, 103; *Machacek v. Hall,* 131 Iowa 412; *Gibson v. City of Denison,* 153 Iowa 320; *Cutshall v. City of Keokuk,* 185 Iowa 808, 813.

If, however, one knows, or as an ordinarily cautious person ought to know, that it is imprudent for him to pass over a sidewalk, and he does so, and is injured, if another safe and equally convenient way was open to him, he is guilty of such negligence as will defeat recovery.  *Gibson v. City of Denison,* supra.  In the case at bar, plaintiff knew the condition of the walk, and, according to his own testimony, realized that it was dangerous and unsafe for pedestrians to pass over the west half of it.  One witness testified that, while he was carrying a basket of clothes on his shoulder, in attempting to pass some parties whom he met at the place in question, he tripped and fell; but, manifestly, he was not in a position to observe closely the condition of the walk.  Plaintiff frankly admitted that he was not thinking of the walk; that he observed no care; and that he did nothing to avoid the danger that was in his path, although he knew of and appreciated the dangerous character of the walk.  Had he taken

the right-hand side, he would have been safe. This way was convenient, and could as easily have been taken by him as the dangerous way. His companion was walking a short distance in advance, and there was nothing to prevent him from walking on the east half of the walk. It is true that we have repeatedly said that pedestrians passing over sidewalks are not bound to assume the duty of inspectors, but they are held to the exercise of ordinary care: that is, such care as a reasonably prudent person would exercise under the circumstances. As stated, in this case, the plaintiff knew the condition, and appreciated the dangerous character of the walk. He had gone from his home, 2 or 3 blocks distant, to a grocery store but a few minutes before, where he had purchased some supplies, and was returning to his home, walking slowly. The night was dark; but this did not relieve him from the duty to exercise reasonable care to avoid injury, while attempting to pass over a sidewalk that he knew to be dangerous. The case is not one where the plaintiff knew that the walk was in a dangerous condition, but believed he could pass over it in safety. He was not thinking at all about it. It seems to us that he was so clearly guilty of contributory negligence that reasonable minds could not differ upon this proposition. It follows that the judgment of the court below must be, and is,—*Affirmed.*

ARTHUR, FAVILLE, and DE GRAFF, JJ., concur.

EVANS, C. J., WEAVER and PRESTON, JJ., dissent.