CORA MARDIS, Appellant, v. CITY OF INDIANOLA, Appellee.

No. 44967.

OCTOBER 15, 1940.

J. O. Watson, Jr., O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellant.

M. D. Hall and Reson S. Jones, for appellee.

OLIVER, J.—Action at law by Cora Mardis against City of Indianola, Iowa, for damages from personal injuries resulting from a fall upon a sidewalk on November 20, 1937, at about 1:30 p. m. The sidewalk was of cement, 4 feet in width, and ran along the south side of a residential street. At the time plaintiff was going from her home to the business section of the city and was walking west at a point immediately north of a house owned by Pearl Warthen. There had been a 3-inch fall of snow on the morning of November 18. Thereafter to the time of the accident the weather bureau records show that the temperature varied between 30 degrees above zero and 8 degrees above zero, Fahrenheit. Plaintiff testified that the only portion of the sidewalk in front of the Warthen property from which the snow had been cleared was a somewhat irregular strip or path about 10 inches wide, south of the center of the walk. Apparently, a shovel had been pushed along this east and west strip, thus pushing the snow to each side of it. As plaintiff walked along said cleared path she saw in the path a few feet ahead of her a broken place in the sidewalk filled with crushed snow and ice and fragments of cement and noticed that the tracks in the snow and ice indicated that some pedestrians had walked through this place while others had gone around it on the parking to the north. At this point she was alongside and south of a long irregular crack or break in the sidewalk which ran in a general east and west direction near its center, parallel to the cleared pathway. The sidewalk had for some years been thus cracked and broken. This crack varied in width up to an inch or more and was filled with grass which had grown to several inches in height. The sidewalk on the south side of this crack had raised from 1 to 3 inches so that along the north edge of the crack the

sidewalk was abruptly lower than along the south edge of said crack. Plaintiff testified the snow on the sidewalk made its surface on each side of the crack appear to be even and that she did not see the crack in the walk. However, she saw the grass in the crack although the grass was partly covered with ice. At different places in her testimony plaintiff described the ice as slick, sloping down, with frozen heel tracks and footprints, as being uneven and as being chunked up.

To avoid the broken place in the sidewalk in the path ahead, plaintiff intended to walk around it on the parking as some others had done. Starting to do this she took one step to the north with her right foot and tried to step over the crack. Instead she stepped upon the grass upon the crack.

There was ice in the grass. "It also sloped down and I stepped on it and my feet went out and I fell down. My foot came in contact with the ice and concrete. I stepped on the grass, that was icy, and then the concrete, of course, was so raised that it threw me back."

The petition alleged the City was negligent in failing to keep the sidewalk in repair and in failing to remove the snow and ice therefrom. At the conclusion of the evidence upon motion of the defendant, the court directed a verdict against the plaintiff and judgment was rendered thereon. Plaintiff has appealed.

One ground of the motion for directed verdict was that the evidence showed plaintiff was guilty of contributory negligence as a matter of law. The record upon this point discloses some unusual features.

In June 1936, plaintiff had suffered serious injuries in a fall upon this same sidewalk only 2 or 2½ feet west of the place where she fell in November 1937. At the January 1937 term of district court she had instituted suit against Pearl Warthen, the owner of said property, for damages on account of injuries received in her first fall, stating in her petition:

" * * * said sidewalk * * * had separated and broken near the center thereof as to leave a space an inch or so in width, and this was several inches in depth, and on the 30th day of June, 1936, grass had grown up therein so that the

space between the said cement and the hole therein was obstructed and could not be seen or observed as a person was walking over the same. That on such date, * * * plaintiff * * * stepped in the said hole and space hereinbefore referred to, and the heel of her shoe caught therein and held and she was thrown to the cement sidewalk in such a way that the fourth vertebra on the right side of her body was broken, crushed and dislocated."

In June 1937, 1 year after her first fall and 5 months before the second fall plaintiff herself took a number of photographs of the sidewalk. The record does not show whether or not these pictures were taken in preparation for the trial of the suit against Warthen. In any event 7 of said photographs, Exhibits A to G, were introduced in evidence in the case at bar. Plaintiff testified the walk was in exactly the same condition in November 1937, as shown in the photographs, except that there was snow on it in November. In Exhibit A, the camera pointed west. Exhibit B was taken at another angle and closer up. Exhibit C is a side view of the walk taken from the north. Exhibit D is a close-up of the crack in the walk looking west, and Exhibit E another picture of the crack and walk from the same place. Exhibit F is a picture looking west at another angle, and Exhibit G another close-up of the walk looking west. The photographs show the broken place in the south part of the sidewalk around which plaintiff intended to walk and the strip of vegetation several inches in width apparently growing in a long, irregular crack running along the middle part of the sidewalk.

Plaintiff did not testify directly as to the care exercised by her at the time of the accident other than that she was wearing rubber-soled overshoes. She did say she believed she could pass over the sidewalk in safety. She also testified:

"It did not occur to me that that was the place where I fell and broke my back a year or two before. I thought of it but then it wasn't icy when I fell and broke my back and it was icy this time when I fell. * * *

"I did not realize there was ice up that street anymore than any other street, * * *.

"Up until the time I fell I saw no ice at all."

This last statement was not consistent with other testimony given by plaintiff. Her companion, who was walking behind plaintiff, testified the fall occurred as plaintiff was turning around to speak to her while walking.

In the course of photographing this part of the sidewalk from various angles and distances plaintiff must necessarily have become thoroughly conversant with its cracks, breaks, slopes, vegetation and other features. As she reached this point on November 20, 1937, she could see the broken place in the sidewalk ahead of her and the ice-covered grass to her right along the center of the sidewalk. Obviously, she must have realized that this part of the walk had not been repaired, was in the same condition as when she photographed it, and that the strip of ice-covered grass marked an abrupt slope or drop to the north in the surface of the sidewalk.

It is contended that plaintiff was not chargeable with contributory negligence as a matter of law. Among the cases cited by plaintiff upon this point are Howard v. Waterloo, 206 Iowa 1109, 1114, 221 N. W. 812, 814; Greenlee v. Belle Plaine, 204 Iowa 1055, 216 N. W. 774; Davis v. Dubuque, 209 Iowa 1324, 1328, 230 N. W. 421, 423.

In Howard v. Waterloo, supra, plaintiff was not familiar with the sidewalk; in Greenlee v. Belle Plaine, supra, she did not know of the particular imperfection, and in Davis v. Dubuque, supra, it was questionable whether plaintiff knew of the obstruction. Under these situations with the attendant circumstances, the question of contributory negligence was held to be a jury question in each case.

In Cratty v. Oskaloosa, 191 Iowa 282, 182 N. W. 208, a pedestrian, who had previously noticed a defect in a sidewalk and was aware of its dangerous and unsafe character, was held contributorily negligent in stepping into it on a cold, dark and misty night, the record showing he was not thinking of it at the time and did nothing to avoid it although he might have done so by walking on the opposite side of the walk. There is a statement in that case that mere knowledge of a defect in a sidewalk or that the use thereof may be attended with some danger is not sufficient to charge a party thereby injured with

contributory negligence, but, if one knows, or as. an ordinarily cautious person ought to know, that it is imprudent for him to pass over a sidewalk, and he does so and is injured, if another safe and equally convenient way is open to him, he is guilty of contributory negligence.

In Lundy v. Ames, 202 Iowa 100, 209 N. W. 427, a pedestrian who attempted to pass over an abrupt ice-covered decline in a street, knowing it to be dangerous, in the belief he could do so in safety, was held guilty of negligence per se in the absence of any showing of acts of care on his part.

Other cases might be cited in which the injured party was or was not held chargeable with contributory negligence per se. Each holding turns upon the particular facts of that case. So in this case plaintiff's conduct must be measured by the standard of ordinary care applied to the circumstances shown in the record. The facts here differ materially from those of any other case which has been called to our attention.

Usually a pedestrian's information of the condition of a sidewalk is only such as he has acquired by observation when passing over it, and is somewhat general in nature. In such case his failure to learn and remember its imperfections in exact detail might be excusable. But in this case plaintiff had carefully photographed the imperfections of the place where she afterwards fell. Her knowledge of them was specific. And the serious injuries sustained in her previous fall at almost the same spot (on account of which she had instituted a damage suit within the year) must have caused this knowledge to be poignantly and definitely impressed upon her. Therefore, she should be charged with a more detailed and exact recollection and knowledge of the defects in the sidewalk than should be imputed to a pedestrian only casually familiar with the place.

We think the only conclusion properly deducible from the record is that plaintiff was at the time aware of the break in the sidewalk and the abrupt drop at the edge of the strip of grass. Under the circumstances an ordinarily careful and prudent person would have realized that it was dangerous and imprudent for her to step upon this strip of ice-covered grass with its abrupt slope to the north. Whether plaintiff intentionally stepped upon this place or did so because of inattention is not

182

clear from the record. In either event she was clearly chargeable with contributory negligence as a matter of law.

Because this holding disposes of the case the consideration of other assigned errors and of other grounds of the motion for directed verdict is unnecessary.

The judgment is affirmed.—Affirmed.

RICHARDS, C. J., and HAMILTON, BLISS, HALE, SAGER, MILLER, and MITCHELL, JJ., concur.